# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY TOFAUTE AND DAVID DIXON,<br><br>  Plaintiffs,<br><br>  v.<br><br>COUNTY OF MADERA, ET AL.,<br><br>  Defendants. | Case No. 1:16-cv-01627-DAD-SKO<br><br>**ORDER DISMISSING PLAINTIFFS' COMPLAINT WITH 30 DAYS LEAVE TO AMEND**<br><br>(Doc. 1) |

## I.  INTRODUCTION

On October 28, 2016, Plaintiffs Timothy Tofaute ("Tofaute") and David Dixon ("Dixon") (collectively "Plaintiffs") filed a complaint (the "Complaint") against Madera County ("the County")[1]; District Attorney for the County of Madera David Linn ("Linn"); former District Attorney for the County of Madera Michael Kietz ("Kietz"); former Sheriff for the County of Madera John Anderson ("Anderson"); Deputy District Attorney for the County of Madera Nicolas Fogg ("Fogg"); and Detective for the Madera County Sheriff's Department Robert Blehm

---

[1] Although the County of Madera is not included in the "Parties, Jurisdiction, and Venue" portion of the complaint, it is named in the caption of the lawsuit, and therefore the Court construes Plaintiffs' intent to name the County as a defendant in this matter.

("Blehm"). (Doc. 1.) Plaintiffs are proceeding *in forma pauperis* and pro se. For the reasons set forth below, Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND.

## II. FACTUAL ALLEGATIONS

On September 12, 2014, Plaintiffs accepted positions as sworn Police Officers for the Chukchansi Tribal Police Department of the Picayune Rancheria of Chukchansi Indians ("Tribal Police"). (Doc. 1 ("Compl.") ¶ 26.) During the course of that employment, Plaintiffs were asked by the Tribal Council to investigate certain events at the Chukchansi Gold Resort and Casino (the "Casino"). (*Id.* ¶ 27.) Specifically, the Tribal Council requested the Tribal Police to search for "an audit required by the National Indian Gaming Commission ("NIGC") for compliance with the Indian Gaming Regulatory Act." (*Id.*) The NIGC had issued a "Temporary Closure Order" for the Casino if the audit was not received by October 27, 2014. (*Id.* ¶ 28.) The audit was being withheld by a "hostile faction" of the Tribe "who had previously taken over the [C]asino by force" and "occupied the offices of the Tribal Gaming Commission ("TGC")". (*Id.* ¶ 29.)

On or about October 3, 2014, Chief of the Tribal Police, John Oliveira, met with Defendant Kietz at the Madera County District Attorney's Offices to give "advance notice" of the Tribal Police's intention to enter the TCG offices at the Casino. (*Id.* at 7:1–6.) Mr. Oliveira also "revealed the plan of operation" to Defendant Kietz and provided him with "documents supporting the operation." (*Id.* at 7:7–9.) Mr. Oliveira also advised Defendant Kietz at that meeting of the possibility that "armed security guards" who were employees of Security Training Concepts ("STC") "may be detained or arrested due to their history of violence." (*Id.* at ¶ 30; 7:10–13.) During that meeting, Defendant Kietz "expressed concern that the members of STC were non-Indian and that the Tribal Police would not have jurisdiction to detain or arrest non-Indians." (*Id.* at 7:14–16.) Mr. Oliveira provided Defendant Kietz "with several federal case laws [sic] recognizing the inherent authority of Tribal Police to detain and arrest non-Indians, more specifically, the arrest and detention of non-Indians" in California, which is covered by Public Law 83-280 (18 U.S.C. § 1162, 28 U.S.C. § 1360) ("Public Law 280".) (*Id.* at 7:17–20.) According to Plaintiffs, Public Law 280 "confer[s] jurisdiction on certain states, to include the

State of California, over most or all of Indian country within their borders . . . ." (*Id.* ¶ 14.) Mr. Oliveira followed up that meeting with an email to Defendant Kietz on or about October 5, 2014, attaching "the case and laws discussed as well as a 2001 U.S. DOJ opinion supporting the arrest and/or detention of non-Indians in Public Law 280 states." (*Id.* at 7:21–24.)

On or about October 9, 2014, Plaintiffs and six (6) other members of the Tribal Police went into the Casino to obtain a copy of the audit and "were confronted by armed private security guards employed by the hostile faction and by . . . [STC]." (*Id.* ¶ 30.) The Tribal Police "arrested and detained several of the [STC] security guards for release to the Madera County Sheriff's Department." (*Id.* ¶ 31.) Defendant Anderson "appeared at the scene and made no attempts [sic] to discount the authority of the Tribal Police.," but he did "explicitly express outrage at the Tribal Police placing non-Indians in handcuffs." (*Id.* ¶ 33.)

Defendant Anderson "took the custody of the [STC] security guards for the hostile faction from the Tribal Police and removed them the premises." (*Id.* ¶ 34.) "Unbeknownst to [] Plaintiffs, Defendant [] Anderson promptly released the hostile security guards on the scene (outside the [C]asino), which resulted in the same security guards returning inside and assaulting several Tribal Police officers within five minutes of their release." (*Id.* ¶ 36.) During his visit to the Casino on October 9, 2014, Defendant Anderson "recognized [] Plaintiffs as Tribal Police officers and made no attempts [sic] to arrest or obstruct [] Plaintiffs from carrying out their official duties." (*Id.* ¶ 35.)

In the days following the October 9, 2014, incident, the Madera County Sheriff's Department "initiated an investigation into whether [] Plaintiffs and the nine sworn Tribal Police officers violated California state law in the performance of their duties." (*Id*. ¶ 37.) On October 31, 2014, Defendant Kietz "filed a criminal complaint against Plaintiffs alleging 27 felony counts to include kidnapping, false imprisonment, assault with a firearm, and illegal use of a stun gun." (*Id.* ¶ 38.) According to Plaintiffs, Defendant Kietz filed a criminal complaint "only days prior to the local election in which he was running for re-election as Madera County District Attorney in the hopes of increasing support from constituents." (*Id.* at 7:27–8:2.) Plaintiffs allege that "Defendant [] Linn was quoted in the local newspaper during his campaign for Madera County

3

District Attorney calling the criminal complaint filed by Defendant [] Kietz a political decision and not one in the interest of justice." (*Id.* at 8:3–6.)

"An arrest warrant was issued for Plaintiffs on or about October 31, 2014," and "[o]n or about November 9, 2014, Plaintiffs turned themselves into authorities and were placed in the Madera County jail until they posted bail." (*Id.* at 8:7–9.) Plaintiffs allege that they suffered a loss of "over $40,000 required by a bonding company in order to post bail and be released from jail." (*Id.* at 8:10–11.) According to Plaintiffs, on or about May 19, 2016, "all charges listed in the criminal company were dismissed in favor of [] Plaintiffs." (*Id*. at 8:12–13.)

Based on these allegations, Plaintiffs bring causes of action under 42 U.S.C. § 1983 alleging Fourth Amendment claims for malicious prosecution, and claims for "arrest without probable cause" and "false arrest." Plaintiffs also allege claims for "failure to properly train," as well as a cause of action under the California Tort Claims Act for "intentional emotional distress."

### III.   SCREENING STANDARD

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case, and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The Court's screening of the Complaint under 28 U.S.C. § 1915(e)(2) is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiffs must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. *See, e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932

F.2d 795, 798 (9th Cir. 1991).

In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). Moreover, since plaintiff is appearing pro se, the Court must construe the allegations of the Complaint liberally and must afford plaintiff the benefit of any doubt. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

Further, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citations omitted).

## IV.   DISCUSSION

**A.   Plaintiffs' Claims Under 42 U.S.C. § 1983 Shall Be Dismissed.**

   **1.   Defendants Linn, Kietz, Anderson, Fogg, and Blehm Sued for Damages in Their Official Capacities Are Not "Persons" Under § 1983.**

In pertinent part, 42 U.S.C. § 1983 provides that "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

5

by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." (emphasis added).

Although unclear, it appears that Plaintiffs' causes of action under § 1983 are brought against Defendants Linn, Kietz, Anderson, Fogg, and Blehm in their official capacity. (Compl. ¶¶ 3–7.) "[S]tate officials sued in their official capacities . . . are not 'persons' within the meaning of § 1983 . . . ." *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, "[t]he Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court." *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999). By contrast, a state official sued in his official capacity for "prospective injunctive relief" *is* considered a "person" under § 1983, and the Eleventh Amendment does not bar such claims. *See Flint*, 488 F.3d at 825.

Plaintiffs seek money damages against Defendants Linn, Kietz, Anderson, Fogg, and Blehm, not prospective injunctive relief. (Compl. at 10 ("Prayer for Relief").) To the extent that Plaintiffs' § 1983 claims are brought against Defendants Linn, Kietz, Anderson, Fogg, and Blehm in their official capacities, they are not cognizable.

Plaintiffs, however, allege in their Complaint:

> Upon information and belief, all above-named Defendants, were acting within the course and scope of their authority and employment at all relevant times herein (collectively the "Defendants"). If it turns out through discovery that these employee/defendants were not acting within the course and scope of their employment, Plaintiffs will seek to amend or conform this complaint to the evidence.

(*Id.* ¶ 8.) Accordingly, the Court will grant Plaintiffs leave to amend their Complaint to attempt to state claims under § 1983 against the named individual defendants in their personal capacities. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Liability in a personal-capacity suit can be demonstrated by showing that the official, acting under color of state law, caused the deprivation of a federal right. *See id.* at 166.

To the extent Plaintiffs wish to proceed with their malicious prosecution claim under § 1983 against the individual defendants in their personal capacities, they must plead tortious

6

conduct by the defendant under the elements of a state law malicious prosecution claim, as well as allege that the defendants acted under color of state law for the purpose of denying them equal protection or another a specific constitutional right. *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."); *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987) (a malicious prosecution claim is not generally cognizable federally if the state judicial system provides a remedy, but "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights"). In addition, to prevail on a malicious prosecution claim under § 1983, Plaintiffs must establish that the prior proceedings terminated in such a manner as to indicate his innocence, *and that charges were not withdrawn on the basis of a compromise among the parties*. *Awabdy*, 368 F. 3d at 1068 (emphasis added). *See also Sanders v. Matthew*, No. 15-CV-395 LJO-EPG, 2016 WL 7210115, at *4 (E.D. Cal. Dec. 12, 2016) (dismissing the plaintiff's malicious prosecution claim where the plaintiff pleaded *nolo contendere* to a misdemeanor charge, resulting in a felony charge being dismissed, because the allegations showed that the proceedings had not "terminated in such a manner as to indicate his innocence.").

      Finally, Plaintiffs are advised that state prosecutors are entitled to absolute prosecutorial immunity from claims under §1983 when they are acting pursuant to their official role as advocate for the state performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Courts have held that the filing of a criminal complaint in state court is an activity protected by absolute prosecutorial immunity. *See, e.g., Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013) (upholding district court's finding on summary judgment that the decision to file a criminal complaint against the defendant in state court was protected by absolute prosecutorial immunity.); *Geiche v. City & Cty. of San Francisco*, No. C 08–3233 JL, 2009 WL 1948830, at *4 (N.D. Cal. July 2, 2009) ("Here, named

7

defendant Steger is alleged to have done (and in fact did) nothing more than sign the charging instrument against Plaintiff. Filing the criminal complaint was an essential part of instigating the criminal prosecution and such conduct is entitled to absolute immunity.") (citing *Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 679 (9th Cir.1984); *Freeman on Behalf of the Sanctuary v. Hittle*, 708 F.2d 442, 443 (9th Cir. 1983)).

>   **2. Plaintiffs' § 1983 Claims Against Defendant County of Madera (Counts I–III), as well as Their "Failure to Properly Train" Claim (Count V), Are Insufficiently Pleaded.**

Under longstanding Supreme Court authority, a municipality cannot be held liable under § 1983 simply because it employs an individual accused of, or who has engaged in, illegal or unconstitutional conduct. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that "[a] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough [under *Monell* ] for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."). Because there is no respondeat superior liability under § 1983, counties and municipalities may be sued under § 1983 only upon a showing that an official policy or custom caused the constitutional tort. *See Monell*, 436 U.S. at 691. "A local government entity cannot be held liable under § 1983 unless the plaintiff alleges that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized [governmental] policy." *Ortez v. Washington Cty., State of Or.,* 88 F.3d 804, 811 (9th Cir. 1996) (citation and quotations omitted) (alteration in original). "[L]ocal governments, like any other § 1983 'person,' . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91. A local governmental entity may also "be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 123

(1992). "In particular . . . the inadequate training of police officers could be characterized as the cause of the constitutional tort if—and only if—the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the police come into contact." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Plaintiffs' Complaint does not allege that a policy or custom existed to cause the alleged malicious prosecution (Count I), the "Arrest Without Probable Cause" (Count II), or the "False Arrest" (Count III) by Madera County employees. Elsewhere in the Complaint, however, Plaintiffs purport to bring a claim for "Failure to Properly Train" (Count V), but do not identify the statutory or common law basis for this claim. In the absence of any specified legal basis, "Failure to Properly Train" is not a cognizable claim.

However, by alleging in Count V that "Defendants failed to properly train sheriff's department and district attorney personnel in Public Law 280 resulting in negligent and criminal behavior" (Compl. at 10:1–2), it appears that Plaintiffs are attempting in Count V to state a claim against Defendant County of Madera under § 1983 for municipal liability. Accordingly, the Court shall dismiss Plaintiffs' § 1983 claims against Defendant County of Madera without prejudice and with leave to amend in order to afford Plaintiffs an opportunity to attempt to state a claim under § 1983 against the County for injury caused by an official policy or custom.

**B.    Plaintiffs' Claim for "Intentional Emotional Distress" Under the California Tort Claims Act (Count IV) Shall Be Dismissed.**

Under the California Tort Claims Act, a plaintiff may not maintain an action for damages against a public entity or a public employee unless he timely files a notice of tort claim. Cal. Gov't Code §§ 905, 911.2, 945.4 & 950.2; *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part."). "Compliance with the claims statutes is mandatory; and failure to file a claim is fatal to the cause of action." *City of San Jose v. Sup. Ct.*, 12 Cal. 3d 447, 454 (1974) (internal citations omitted). "Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to [dismissal] for

9

not stating facts sufficient to constitute a cause of action." S*hirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007); *accord Mangold*, 67 F.3d at 1477.

Here, Plaintiffs do not allege any facts in their complaint demonstrating that they have complied with the California Tort Claims Act by timely filing a notice of tort claim with the appropriate entities. Therefore, Plaintiffs' "intentional emotional distress" cause of action under the California Tort Claims Act against Defendants shall be dismissed for failure to state a claim. *See Mangold*, 67 F.3d at 1477; *Shirk*, 42 Cal.4th at 209.

Further, under California law, a public entity is not liable for a claim brought by a plaintiff unless liability is provided for by statute or required by the state or federal constitution. Cal. Gov. Code § 815*; Lundeen Coatings Corp. v. Dep't of Water & Power for the City of Los Angeles*, 232 Cal. App.3d 816, 832 (1991); *see also Munoz v. City of Union City*, 148 Cal. App. 4th 173, 182, (2007) ("'[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care.'") (citations and quotations omitted). Therefore, in order to state a cause of action for government tort liability, "every fact essential to the existence of statutory liability must be plead[ed] with particularity, including the existence of a statutory duty." *Freitag v. City of San Diego Harbor Police*, No. 11–CV–2999–IEG (JMA), 2012 WL 160051, at *5 (S.D. Cal. Jan. 18, 2012) (citing *Zuniga v. Housing Auth.*, 41 Cal. App. 4th 82, 96 (1995) abrogated on other grounds by *Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th 1112 (2002)). Plaintiffs do not identify in their Complaint what statute or statutes establish the County of Madera's liability. Therefore, Plaintiffs' claim under the California Torts Claim Act against the Defendant County of Madera should also be dismissed on this basis.

Finally, Plaintiffs are advised that California Government Code § 821.6 provides prosecutorial immunity for public employees for "injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." *Id.* § 821.6. "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their

prosecutorial duties from the threat of harassment through civil suits."[2] *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007). Section 821.6 "immunizes not only the act of filing or prosecuting a judicial or administrative complaint, but also extends to actions taken in preparation for such formal proceedings." *Id.* (citing *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1209–10 (1994)).

A defendant is immune from liability pursuant to § 821.6 if: (1) he was an employee of the County; (2) Plaintiffs' injuries were caused by acts committed by the defendant in instituting or prosecuting a judicial or administrative proceeding; and (3) the defendant's conduct while instituting or prosecuting the proceeding was within the scope of her employment. *Cameron v. Buether*, No. 09-CV-2498-IEG, 2010 WL 2635098, at *3 (S.D. Cal. June 29, 2010) (citing *Amylou R.*, 28 Cal. App. 4th 1205, 1209–10 (1994)). If these requirements are met, immunity attaches even if the defendant acted "maliciously and without probable cause." *See* Cal. Gov't Code § 821.6.

Accordingly, the Court dismisses Plaintiffs' state law tort claim under the California Tort Claims Act, Count IV, without prejudice and with leave to amend to attempt to state a claim pursuant to the above.

**C.     Plaintiffs May File An Amended Complaint.**

Plaintiffs' Complaint fails to state cognizable claims under 42 U.S.C. § 1983 and under state tort law against Defendants. However, "Rule 15(a) [of the Federal Rules of Civil Procedure] is very liberal and leave to amend 'shall be freely given when justice so requires.'" *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (quoting former version of Fed. R. Civ. P. 15(a)). *See also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). As Plaintiffs are proceeding pro se, they shall be given an opportunity to amend their claims to cure the identified deficiencies to the extent they can do so in good faith.

Plaintiffs are advised that an amended complaint supersedes the original complaint. *See*

---

[2] Immunity under Government Code section 821.6 is not limited to claims for malicious prosecution, but also extends to other causes of action arising from conduct protected under the statute, including intentional infliction of emotional distress. *See Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1435–37 (1988).

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc).  The amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Rule 220 of the Local Rules of the United States District Court, Eastern District of California.  Once Plaintiffs file an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  Plaintiffs may not change the nature of this suit by adding new, unrelated claims in their amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  If Plaintiffs fail to file an amended complaint or fail to cure the deficiencies identified above, the Court will recommend that the complaint be dismissed with prejudice and without leave to amend.

### V.   CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND;
2. Within 30 days from the date of service of this order, Plaintiffs shall file a first amended complaint; and
3. If Plaintiffs fail to file a first amended complaint in compliance with this order, this action will be recommended for dismissal for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

Dated:   **February 3, 2017**              /s/ *Sheila K. Oberto*
                                      UNITED STATES MAGISTRATE JUDGE